UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80588-CIV-COHN/SELTZER

MAXIMO GOMEZ,

      Petitioner,

vs.

WILLIAM CHURCHWELL,
Warden, Dade Correctional
Institution,

      Respondent.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court upon the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") (DE 1) filed by Maximo Gomez ("Petitioner") and was referred to the undersigned pursuant to 28 U.S.C. § 636. For the following reasons, the undersigned recommends that the Petition be DENIED.

I.     PROCEDURAL HISTORY

On January 15, 2004, a Palm Beach County jury found Petitioner guilty of burglary of an occupied dwelling with an assault or battery. Ex. 2, Tr. 428.[1] In sum, the trial testimony revealed the following:

> [On or between September 26, 2002, and September 27, 2002 (Ex. 1)], [Petitioner] broke into the victim's house through a window and battered the victim. (Exh. 2- 220-223, 289). [Petitioner] claimed he simply wanted to retrieve his belongings from the residence. (Exh. 2- 288). Instead of calling the police

---

[1] The Petition cited in this Report and Recommendation can be found at docket entry 1, the Response at docket entry 7, the Reply at docket entry 11, and Respondent's Supplemental Memorandum at docket entry 12 . The various exhibits cited in this Report and Recommendation can be found in the Index to Appendix at docket entry 8.

> to retrieve the belongings that were allegedly inside the victim's residence, [Petitioner] chose to break some windows and force his way into the victim's residence. (Exh. 2- 302-303). According to [Petitioner's] own testimony, the victim attacked him [with a phone] as he was attempting to illegally break into her home. (Exh. 2- 289). . . . As the victim legally attempted to defend herself, her residence, and her children, [Petitioner] grabbed the victim and threw her to the floor. Id. [Petitioner's] blood was all over the victim and her residence. (Exh. 2- 200-204, 225, 257). [Petitioner] [battered] the victim and pictures of her injuries were entered into evidence. (Exh. 2- 205, 221-225). [Petitioner] was still inside the victim's residence when law enforcement arrived on the scene in response to the victim's 911 call. (Exh. 2- 199, 257).

Ex. 3 (Answer Brief of Appellee at 16-17). On February 27, 2004, the trial court adjudicated Petitioner guilty and sentenced him to life in prison under Fla. Stat. § 775.082 (Prisoner Releasee Reoffender Act). Ex. 2, Tr. 439, 461.

On March 24, 2004, Petitioner noticed a direct appeal, and the parties thereafter filed their appellate briefs. Ex. 3. On September 7, 2005, Florida's Fourth District Court of Appeal affirmed the conviction. Ex. 4 (Gomez v. State, 912 So. 2d 1239 (4th DCA 2005)). On October 18, 2005, the Court of Appeal denied Petitioner's motion for rehearing, and on November 22, 2005, it issued its Mandate. Ex. 5 (docket entries 4D04-1144). Petitioner did not seek review in the Florida Supreme Court. Petition at 3 (DE1).

Petitioner also pursued collateral attacks.[2] On November 4, 2004, he filed a Motion to Correct Sentence in the Palm Beach Circuit Court. Supplemental Memorandum at 2 (DE 12) (citing Supp. Ex. 1). The trial court did not enter a written order, but it did deny the motion on the record following a November 22, 2004 hearing. Id. (citing Supp. Ex. 3).

---

[2] Respondent represented that the parties are in agreement as to the filing dates of all post-conviction motions in this case. Supplemental Memorandum at 1-2.

On January 3, 2006, Petitioner filed pro se a Motion to Correct Sentence. Id. (citing Supp. Ex. 4). The state trial court denied the second Motion on February 13, 2006. Id. (citing Supp. Ex. 5).

While Petitioner's second Motion to Correct Sentence was pending, more particularly, on January 30, 2006, Petitioner filed a Motion for Post-Conviction Relief pursuant to Rule 3.850, alleging ineffective assistance of counsel. Id. (citing Ex. 6). And on August 7, 2006, Petitioner amended his motion for post-conviction relief. Id. (citing Ex. 6). On November 29, 2007, the Circuit Court summarily denied Petitioner's Motion for Post-Conviction relief. Id. at 2-3 (citing Ex. 7). On December 31, 2007, Petitioner appealed the Circuit Court's order. Ex. 8 (docket entries 4D07-5103). On August 2, 2008, the Fourth District Court of Appeal, in a per curiam opinion, affirmed the Circuit Court's denial of Petitioner's Motion. Ex. 9 (Gomez v. State, 977 So. 2d 589 (Fla. 4th DCA 2008)). It issued its mandate on August 18, 2008. Supplemental Memorandum at 3 (citing Ex. 8 (docket entries 4D07-5103)).

On April 16, 2009, Petitioner filed in this Court the instant Petition Under 28 U.S.C. § 2254, and he attached thereto a Supplement to Petition. DE 1. On June 7, 2009, Respondent filed a Response in Opposition to Petition for Writ of Habeas Corpus and Supporting Memorandum of Law. DE 7. On June 11, 2009, the undersigned ordered the parties to file supplemental memoranda. Thereafter, on June 18, 2009, Petitioner filed his Reply, and on that same date Respondent filed a Supplemental Memorandum. DE 11, 12.

The matter is now ripe for review.

II.     THE PETITION[3]

Petitioner seeks relief from his state court conviction and sentence on the ground that he is being held in violation of the United States Constitution. Pursuant to 28 U.S.C. § 2254(a), a federal court must entertain a claim of a state prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." Accordingly, a federal court will intervene in a state's judicial process where it finds wrongs of constitutional dimension. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Wainwright v. Goode, 464 U.S. 78, 83-84 (1983). Here, Petitioner initially asserted three constitutional grounds for relief. Petition at 6-11 (DE 1).

A.     Standard of Review

Section 2254 provides the standards by which a federal court must review a state prisoner's habeas corpus petition where there has already been a state court adjudication on the merits.[4] See 28 U.S.C. § 2254(d)-(e)(1). In pertinent part, the statute provides:

---

[3] Before addressing the merits of a state prisoner's habeas corpus petition, a court must first satisfy itself that the petition does not warrant dismissal on procedural grounds – timeliness and exhaustion. Here, Respondent concedes that the Petition is timely, as only 241 days have elapsed of the one-year limitations period for state prisoners seeking to file habeas corpus petitions under § 2254. Supplemental Memorandum at 3 (DE 12); see 28 U.S.C. § 2244(d)(1). Respondent, however, does not concede that Petitioner exhausted his state court remedies as to his second claim, in which Petitioner has argued that he received ineffective assistance of counsel. The undersigned addresses Respondent's exhaustion argument as part of the analysis of Petitioner's second claim. See infra note 11.

[4] The Eleventh Circuit has noted that these standards, adopted as part of the AEDPA, "place[] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law."

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Id.

The Eleventh Circuit has defined the statute's operative terms – "contrary to," "unreasonable application," and "clearly established Federal law":

> The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from

---

Crawford, 311 F.3d at 1296 (quoting Bell v. Cone, 535 U.S. 685, 693 (2002)).

5

> Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.
>
> Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d). Clearly established federal law is *not* the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision."

Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (citations and footnotes omitted) (italics in original).

B.  Ground 1

As to his first ground for relief, Petitioner claims that the trial court violated his constitutional right to confront witnesses against him when it limited his counsel's cross-examination of the victim. Supplement to Petition at 3 (DE 1). According to the Petition:

> Trial court limited cross-examination of victim. Petitioner was not permitted to question victim about the leniency she received from her probation officer when she reported she violated by leaving county. Also Petitioner was not permitted to question victim about the fact she was told she would only be violated if she was arrested or did not appear to testify against Petitioner.

Petition at 6 (DE 1).

The Sixth Amendment's Confrontation Clause states that in all criminal prosecutions, "the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." U.S. Const. amend. VI. The right to confront has been broadly defined, see Davis v. Alaska, 415 U.S. 308, 315 (1974) ("Confrontation means more than being allowed to confront the witness physically."), and the right can be violated by limitations

6

placed on cross-examination. See also Smith v. Illinois, 390 U.S. 129, 131 (1968) (holding that it was a violation of the Confrontation Clause when defense was prohibited from asking name and address of principal prosecution witness); McKinzy v. Wainwright, 719 F.2d 1525, 1528 (11th Cir. 1983) (holding that the Sixth Amendment was violated when court prohibited cross-examination as to witness' possible motives to shade his testimony to please state authorities); Wasko v. Singletary, 966 F.2d 1377, 1381 (11th Cir. 1992) (holding that the Sixth Amendment can be violated when court prohibits cross-examination of a witness as to his belief that favorable government treatment will come as a result of his testimony). In particular, courts recognize the constitutional significance of exposing to a jury a witness' motivation. As the Davis Court noted: "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." 415 U.S. at 316-17.

The Supreme Court, however, has also recognized that the right to cross-examination, while broad, is not without limits. According to the Court: "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (italics in original). For that reason, the Supreme Court has recognized that trial judges may properly limit cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Even where a trial court has erred in limiting cross-examination, the judgment will survive habeas review if the error is deemed "harmless." Id. at 684. An error is harmless

if it "did not influence the jury, or had but very slight effect," Kotteakos v. United States, 328 U.S. 750, 764 (1946), and "the judgment was not substantially swayed by the error." Brecht v. Abrahamson, 507 U.S. 619, 642 (quoting Kotteakos, 328 U.S. at 765); see also United States v. Buonsignore, 131 Fed. Appx. 252, 257 (11th Cir. 2005) (noting that volume of admissible evidence supporting verdict rendered harmless the erroneous admission of other evidence that did not substantially affect the verdict's outcome). Stated differently, habeas relief is only warranted where the error "had substantial and injurious effect or influence in determining the jury's verdict." United States v. Lane, 474 U.S. 438, 449 (1986) (quoting Kotteakos, 328 U.S. at 776).

The trial record in this case shows that the victim-witness had been placed on probation by a Miami-Dade County Circuit Judge, who had withheld adjudication on a felony charge. Tr. 12, 16-17. The victim's probation supervision was later transferred from Miami-Dade County to Palm Beach County. Tr. 243, 444-45. Prior to Petitioner's trial in the Palm Beach County Circuit Court, the trial judge heard argument on a motion in limine directed to the victim's probationary status. Tr. 243-51. The judge prohibited any inquiries of the victim-witness that would elicit her probationary status. Tr. 25. The judge re-affirmed this ruling during the trial. Tr. 251.

Petitioner first argues that the trial judge erred in prohibiting cross-examination about the leniency that the victim had allegedly received from her probation officer after she had left Palm Beach County without permission. Petition at 6 (DE 1). Such leniency, Petitioner argued, created "bias, motive [and] self-interest." Tr. 251. The State countered that Petitioner's counsel was merely attempting to alert the jury to the victim's probationary status, notwithstanding that Florida law did not allow such disclosure where adjudication

had been withheld.[5]  Response at 9 (DE 7), Tr. 17.

Nothing in the record supports the Petitioner's claim that the victim had received leniency. The victim testified that her travel to Miami-Dade County had been at knife-point. Tr. 247. And because the travel was at knife-point, the State correctly argued that it was not a willful act and, therefore, could not constitute a violation of her probation.[6] Further, during an extended proffer, the victim did not express fear or concern that her probation would be revoked.[7] Petitioner's counsel, therefore, elicited no credible evidence that would

---

[5] Testimony regarding the victim's probation is otherwise irrelevant because Florida state law restricts impeachment to "[crimes] punishable by death or imprisonment in excess of [one] year under the law under which the witness was convicted, or [to crimes] involv[ing] dishonesty or a false statement regardless of the punishment." Fla. Stat. § 90.610. Here, the victim's withheld adjudication does not qualify as a conviction for purposes of this statute. State v. McFadden, 772 So. 2d 1209, 1212 (Fla. 2000) (interpreting "convicted," for the purposes of Fla. Stat. § 90.610, to mean a judgment of the court, which adjudicates guilt, and not simply a guilty plea or verdict). In fact, "a defendant who has adjudication of guilt withheld and successfully completes the term of probation imposed is 'not a convicted person.' " State v. Gloster, 703 So.2d 1174, 1176 (Fla. 1st DCA 1997) (quoting Thomas v. State, 356 So. 2d 846, 847 (Fla. 4th DCA 1978), cert. denied, 361 So.2d 835 (Fla. 1978)).

[6] "It is Respondent's contention that based on [the victim's] proffer as to her status on probation, she indicated that her probation officer would not violate her for her trips to Miami from Palm Beach because they were at knife-point and clearly was not a willful violation of her probation." Response at 10 (DE 7). See Steiner v. State, 604 So. 2d 1265, 1267 (Fla. 4th DCA 1992) ("Probation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation.").

[7] The victim's testimony was proffered outside the presence of the jury:

Q (Petitioner's counsel): "And as of this date, . . . there has been no violation of probation filed against you as a result of trips you have made to Miami, correct?

A (Victim): No.

Q: You never got your probation officer's permission to travel to Miami?

A: No, but I already spoke with her and everything is fine. Thank you.

support a contention of "bias, motive and self-interest."

Not only did the Petitioner fail to adduce evidence that the victim was motivated to curry favor with the Palm Beach County State Attorney (as a result of her knife-point travel

---

> Q: But you never got your probation officer's permission?
>
> A: No, it was at knife point. I didn't really have a chance to call her and tell her.
>
> Q: And when these knife-point trips took place and when you got back, you never reported to your probation officer?
>
> A: No, because that is actually between me and my probation office.
>
> Q: You never reported those?
>
> A: No.
>
> Q: Trips to Miami at knife point to your probation officer?
>
> A: No, not until this all came up and she said it was fine.
>
> Q: And there has been no [v]iolation of [p]robation?
>
> A: No, sir.
>
> Q: Filed against you?
>
> A: Haven't since I have been on probation and I am about to get off in the next two weeks. . . .
>
> Q: You would be in [v]iolation of [p]robation if you left without permission?
>
> A: If I was arrested and I wasn't here and something took place, yes, but, like I said –
>
> Q: That's all I have.
>
> A: – that's not the case.

Tr. 246-247, 250.

to Miami), but, as the trial judge noted, the court having jurisdiction over the victim's probation was located in an entirely different Circuit, Miami-Dade County. Tr. 16, 24. See Landeverde v. State, 769 So. 2d 457, 463 (Fla. 4th DCA 2000) (stating that while a defendant is on probation, the trial judge retains jurisdiction over the defendant until the period of probation expires). That jurisdictional distinction only further erodes Petitioner's contention that the victim had reason to curry favor with the State Attorney in Palm Beach County.

In sum, the trial judge had adequate grounds to find that "[t]here has not been shown any basis . . . of improper motive for the witness' testimony . . ." Tr. 24-25. Permitting cross-examination of the victim under the pretext of exploring a motive to curry favor with the State would have served only to improperly alert the jury to her probationary status, to confuse the issues, and to unduly prejudice the jury. Petitioner, therefore, failed to show that the trial judge's limitation on the cross-examination of the victim was an unreasonable application of clearly established federal law. See Van Arsdall, 475 U.S. at 679 (holding that reasonable limits may be placed on cross-examination).

Yet, even if the trial judge had erred, her error was "harmless"; the judgment was not substantially swayed by the error. Here, the evidence of Petitioner's guilt – burglary of an occupied dwelling with an assault or battery – was overwhelming. Petitioner himself admitted to breaking two windows and entering the victim's home against her will (Tr. 288-89, 303); then, after the victim hit him with a telephone,[8] he admittedly "grabbed [the victim]

---

[8] Under Florida law, the victim was not required to retreat and was permitted to use force in light of a home invasion. See Fla. Stat. §§ 782.02 & 776.012; State v. White, 642 So. 2d 842, 844 (Fla. 4th DCA 1994) ("One may use such force as is necessary to defend one's home.").

11

and "pushed her down to the floor, like threw her down to the floor." Tr. 289. Petitioner's account was corroborated by photographs of the victim's injured face and of the broken windows (Ex. 2 following transcript), as well as by police officer testimony placing Petitioner inside the victim's home following the break-in. Tr. 199, 257. Hence, the victim's testimony about the burglary and initial battery was substantially uncontested.

Petitioner's second Confrontation Clause argument is that the trial judge incorrectly prohibited cross examination about the victim (allegedly) being told that her probation would be violated if she was arrested or did not appear to testify against Petitioner. Petition at 6 (DE 1). More specifically, in the Supplement to the Petition, Petitioner's counsel asserted that the victim had been told "she would only be violated if she was arrested for a new offense *or failed to appear to testify against Petitioner at trial.*" Supplement at 2 (DE 1) (italics in the original). Yet, as the State noted in its Response, no such testimony is found in the record. Response at 10 (DE 7). In the Reply, Petitioner's counsel recanted this allegation, acknowledging that the victim did not "utter those exact words." Reply at 2 (DE 11). Counsel wrote that she drew the incorrect language from the appellate brief of the Petitioner's prior counsel. Reply at 2 (DE 11). See Ex. 3, Appellant Brief at 6. According to counsel, she "mistakenly believed the testimony was more specific." Reply at 2 (DE 11).

Having conceded this error, Petitioner's counsel nonetheless contends that the word "here" in the victim's testimony referred to her appearance in court.[9] The undersigned does not agree. When read in context, the more reasonable inference is that the victim, when

---

[9] Answer (Victim): If I was arrested and I wasn't *here* and something took place, yes, but, like I said – (italics added). Tr. 250.

using the word "here," was referring to her remaining in Palm Beach County. Indeed, the prior question[10] asked if she would be in violation of her probation if she left (presumably the county) without permission; it is not plausible that the question was intended to elicit from the victim what she believed would happen if she left the courtroom without permission. Thus, in her ensuing answer, the word "here" logically refers to her presence in Palm Beach County.

Because the record contains no other evidence suggesting that the State had threatened to charge the victim with a probation violation for failing to appear in court to testify against Petitioner, Petitioner's argument is without basis.

C.   Ground 2

As to his second ground for relief, Petitioner claims that he was denied effective assistance when his trial counsel failed to call neighbors to testify that Petitioner lived at the residence he was accused of burglarizing. Petition at 8 (DE 1). According to the Petition:

> Counsel was ineffective for failing to call neighbors to testify that Petitioner lived at the home he was accused of burglarizing.

Id.

At all times pertinent to the instant Petition, the "measuring stick" for ineffective assistance of counsel claims – the "clearly established Federal law" – has been Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that "the

---

[10] Question (Petitioner's counsel): "You would be in [v]iolation of [p]robation if you left without permission?" Tr. 250.

13

proper standard for attorney performance is that of reasonably effective assistance" and that the burden is on a petitioner seeking habeas relief to demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The Strickland Court set forth a two-pronged test for evaluating claims of ineffective assistance. First, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to a criminal] defendant by the Sixth Amendment." Id. at 687. The test for determining whether an attorney's performance was deficient is not what "the best lawyers" or even what "most good lawyers" would have done, but "only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight and must presume that the performance of counsel was reasonable and adequate. Strickland, 466 U.S. at 689; Rogers, 13 F.3d at 387. Indeed, the Eleventh Circuit has characterized as "strong" the presumption that counsel's performance was reasonable, and it has added that "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." Putnam v. Head, 268 F.3d 1223, 1243 (11th Cir. 2001) (citations and internal quotations omitted; emphasis added).

The second prong of the Strickland test requires a movant to show that counsel's deficient performance resulted in actual prejudice. 466 U.S. at 693; Wiley v. Wainwright,

14

709 F.2d 1412, 1413 (11th Cir. 1983) (requiring showing of "actual and substantial prejudice"). To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

A court, however, is not required to "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the Supreme Court has stated, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." Id.

Significantly, the task of this Court (in considering a § 2254 petition) is not to repeat the inquiry of the state habeas court and assess whether counsel's performance met the Strickland standard for effective assistance; rather, the task of this Court is only "to determine whether the state habeas court was objectively reasonable in its Strickland inquiry." Putman, 268 F.3d at 1244 n.17. Having reviewed the record and considered Petitioner's arguments, the undersigned concludes that the state habeas court was objectively reasonable in concluding that the performance of trial counsel – more specifically, as it concerns the failure to call witnesses – was constitutionally effective. See Ex. 7 (Order Denying Relief at 1; "The [Petitioner] was represented by a competent attorney and is not entitled to any relief."). Stated differently, the state habeas court's denial of Petitioner's claim was not an unreasonable application of clearly established federal law.

In his Amended and Corrected Motion for Post Conviction Relief, Petitioner argued

that he gave counsel the names and contact information for four individuals who were willing and available to testify that he resided at the premises that he had entered in an effort to recover his personal belongings. Ex. 6 (citing Amended Motion at 3-4).[11] In its Response to the Motion, the State pointed out that the alleged testimony of these individuals would have been cumulative to that of [Petitioner's] sister, Clara Gomez. Ex. 6 (Response to Defendant's Pro Se Amended and Corrected Motion for Post Conviction Relief at 7 (citing Tr. 351-361)).

More importantly, however, Petitioner himself testified that after the victim had refused to let him into her house (when he knocked) and after she had called the police, he proceeded to break the bathroom window and the bedroom window and to then crawl into the victim's home through the broken bedroom window. Ex. 6 (Response at 8 (citing Tr. 288-289)). The testimony of Petitioner's witnesses, therefore, would have been irrelevant to the burglary conviction, as the home was that of the victim, not of Petitioner. Indeed, Petitioner admitted in closing argument that he had no permission to be in the victim's home, thereby conceding that element of the burglary; he argued only that he had no intent to commit a crime once inside the home. Ex. 2, Tr. 388-389. Given the testimony and the concessions, it would have made little sense – and ultimately would have made no difference – were counsel to have called the "neighbors" to testify. Hence, as to this argument, the state habeas court's conclusion that Petitioner was "represented by a

---

[11] According to the Reply, these four individuals are the "neighbors" whose testimony Petitioner now argues should have been obtained by trial counsel. Reply at 3 (DE 11). Given that the "neighbors" are apparently the same individuals previously identified by Petitioner in the Rule 3.850 motion, the undersigned finds that Petitioner did exhaust his ineffective assistance claim in the state court.

competent attorney" was an objectively reasonable one. Ex. 7 (Order Denying Relief at 1).

    D.    <u>Ground 3</u>

As his third ground for relief, Petitioner argues that his sentence was not based on facts found by a jury. Petition at 9 (DE 1). According to the Petition:

> Enhancement of sentence was based on facts that w[ere] not charged or found by jury beyond reasonable doubt.

<u>Id.</u>  In his Reply, however, Petitioner appears to withdraw this ground for relief; he "concedes his position has been rejected by the Florida appellate courts." Reply at 3 (DE 11).

V.    <u>RECOMMENDATION</u>

Petitioner exhausted his state court remedies and filed timely in this Court. Yet, his claims fail on the merits. The trial court's prohibition on Petitioner cross-examining the victim as to her probation did not deny Petitioner his right to confront his accuser. Furthermore, the weight of the evidence rendered any error in this respect harmless. Finally, the state habeas court's conclusion that Petitioner was "represented by a competent attorney" was an objectively reasonable one. Against the backdrop of Petitioner's concession that he had broken into the victim's home, the proffered testimony of the neighbors would not have affected the jury's verdict. Accordingly, the undersigned respectfully RECOMMENDS that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (DE 1) be DENIED.

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the

Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE AND SUBMITTED at Fort Lauderdale, this 3rd day of July 2009.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Hon. James I. Cohn
United States District Judge

Lisa Hanley Colon, Esq.
100 N. Biscayne Boulevard
Suite 607
Miami, Florida   33132-0564
Attorney for Petitioner Maximo Gomez

Mitchell A. Egber, Esq.
Assistant Attorney General
1515 N. Flagler Drive
Suite 900
West Palm Beach, Florida   33401-3432